IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

WILLIAM B. ELLIOTT,
TOMMY J. EVARO, and
ANDRIA J. HERNANDEZ,

    Plaintiffs,

vs.                                                                              Civ. No.  10-385 JP/ACT

SUSANA MARTINEZ,
District Attorney for the
Third Judicial District of New Mexico,

    Defendant.

## MEMORANDUM OPINION AND ORDER

Plaintiffs filed this civil rights lawsuit under 42 U.S.C. §1983 alleging a violation of the Fourteenth Amendment of the United States Constitution.  Plaintiffs, grand jury targets who were in custody, contend that Defendant, the District Attorney for the Third Judicial District of New Mexico, violated the Fourteenth Amendment by denying Plaintiffs procedural due process.  Specifically, Plaintiffs assert that Defendant failed to protect their liberty interests by not complying with the New Mexico statute, NMSA 1978, §31-6-11(C) (2003), which sets forth the procedure for providing grand jury targets with notice of the right to testify at upcoming grand jury proceedings.  Section 31-6-11(C) states, in pertinent part, that

> the target of a grand jury investigation shall be notified in writing of the following information: ... (3) the target's right to testify no earlier than four days after receiving the target notice if he is in custody....

Plaintiffs allege that the grand jury target notices Defendant gave them provided less than a four day notice of their right to testify at the grand jury proceedings.

Defendant filed Defendant's Motion to Dismiss Plaintiffs' Complaint (Doc. No. 8) ("Motion to Dismiss") under Fed. R. Civ. P. 12(b)(6) because Plaintiffs are alleging only a violation of state law, not a violation of the Fourteenth Amendment.  Therefore, Defendant says Plaintiffs have not stated a plausible §1983 claim.  In response, Plaintiffs argue that they have stated a plausible §1983 claim because Section 31-6-11(C) creates a liberty interest protected by the Fourteenth Amendment's right to procedural due process.

A court may, in accordance with Rule 12(b)(6), dismiss a complaint for "failure to state a claim upon which relief can be granted."  In ruling on a Rule 12(b)(6) motion to dismiss, the Court must accept all well-pleaded allegations as true and must view them in the light most favorable to the plaintiff. *See Zinermon v. Burch*, 494 U.S. 113, 118 (1990); *Swanson v. Bixler*, 750 F.2d 810, 813 (10th Cir. 1984). Rule 12(b)(6) requires that a complaint set forth the grounds of a plaintiff's entitlement to relief through more than labels, conclusions and a formulaic recitation of the elements of a cause of action. *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).  To survive a Rule 12(b)(6) motion to dismiss, a plaintiff must allege facts sufficient to state a plausible claim of relief.  *Id*. at 570.

The resolution of the Motion to Dismiss turns on whether Section 31-6-11(C) creates a liberty interest protected by the Fourteenth Amendment's right to procedural due process. Generally, "a state's violation of its own laws does not create a claim under §1983." *Rector v. City and County of Denver*, 348 F.3d 935, 947 (10th Cir. 2003).  However, violation of a state statute is actionable under §1983 if it creates a liberty interest protectible by procedural due process under the Fourteenth Amendment. *Montero v. Meyer*, 13 F.3d 1444, 1447 (10th Cir. 1994).   To merit a protectible liberty interest, "a person clearly must have more than an abstract need or desire for it.  He must have more than a unilateral expectation of it.  He must, instead,

have a legitimate claim of entitlement to it." *Board of Regents of State Colleges v. Roth*, 408 U.S. 564, 577 (1972). "[A]n expectation of receiving process is not, without more, a liberty interest protected by the Due Process Clause." *Olim v. Wakinekona*, 461 U.S. 238, 250 n.12 (1983). In most situations, a legitimate claim of entitlement to a protected liberty interest is established when the language of the state statute places "substantive limitations on official discretion." *Kentucky Dept. of Corrections v. Thompson*, 490 U.S. 454, 462 (1989) (quotation marks and citation omitted). This is accomplished when the state statute contains "'substantive predicates' to govern official decision-making, and, further by mandating the outcome to be reached upon a finding that the relevant criteria have been met." *Id*. (citation omitted). In other words, the state statute must contain "'explicitly mandatory language,' i.e., specific directives to the decisionmaker that if the [statute's] substantive predicates are present, a particular outcome must follow, in order to create a liberty interest." *Id*. at 463 (citation omitted). "It should be obvious that the mandatory language requirement is not an invitation to courts to search [statutes] for *any* imperative that might be found. The search is for *relevant* mandatory language that expressly requires the decisionmaker to apply certain substantive predicates in determining whether [a plaintiff] may be deprived of the particular interest in question." *Id*. at 465 n. 4.

Defendant initially relies on *Hoffman v. Martinez*, 92 Fed. Appx. 628 (10th Cir. 2004) (unpublished decision) to support her argument that Section 31-6-11(C) does not create a protected liberty interest. In *Hoffman*, the plaintiff complained, among other things, that his right to due process was violated when, "while detained, he was denied the right to testify at the grand jury hearing, as required by N.M. Stat. §31-6-11(C) [sic]." *Id*. at 632. The Court notes, as Plaintiffs do, that a former version of Section 31-6-11 was in effect during the detention in *Hoffman*. That version of the statute did not provide a specific four day notice period and

merely stated that "[t]he target shall be notified of his target status and be given an opportunity to testify...." NMSA 1978, §31-6-11(B) (1981). The Tenth Circuit Court of Appeals reiterated in *Hoffman* that a violation of a state statute is actionable under §1983 "'only if the [alleged] actions fail to meet basic federal constitutional standards.'" *Id*. (quoting *Rector*, 348 F.3d at 947). The Tenth Circuit then concluded that Section 31-6-11(B) did not support a federal constitutional claim because "'neither in this country nor in England has the suspect under investigation by the grand jury ever been thought to have a right to testify....'" *Id*. (quoting *United States v. Williams*, 504 U.S. 36, 52 (1992)).

Plaintiffs argue that *Hoffman* is distinguishable from this case for two reasons. First, Plaintiffs point out that the Tenth Circuit did not analyze the issue in this case: whether Section 31-6-11(B) created a liberty interest protected by procedural due process. Second, Plaintiffs stress that Section 31-6-11(B) did not contain the specific notice requirements which are present in the current statute, the subject of this lawsuit. Defendant asserts that these distinctions are not relevant to the substance of the Tenth Circuit's broad holding in *Hoffman* that state grand jury procedures are not entitled to constitutional protections.

A protected liberty interest can arise from the Due Process Clause of the Fourteenth Amendment as well as from state law. *See Kentucky Dept. of Corrections*, 490 U.S. at 460 (quoting *Hewitt v. Helms*, 459 U.S. 460, 466 (1983)). The Tenth Circuit in *Hoffman* did not analyze whether Section 31-6-11(B) created a protectible liberty interest; instead, the Court of Appeals referred generally to the historical fact that a target has no right to testify at a grand jury hearing. This suggests that the Tenth Circuit implicitly held that the Due Process Clause (not the state statute) fails to provide a constitutional right to testify before a grand jury. If the Tenth Circuit determined that the Due Process Clause does not provide a constitutional right to testify

before a grand jury, it would follow that the Due Process Clause is not the foundation of a constitutional right to notice of a right to testify at a grand jury proceeding.  Even so, the issue in this case is not whether the Due Process Clause provides a source for a constitutional right to notice of grand jury proceedings, but whether Section 31-6-11(C) creates a liberty interest which requires the state to follow specific notice requirements for grand jury proceedings.  Consequently, *Hoffman* is not helpful in determining the issue at hand.

Defendant further argues that Section 31-6-11(C) does not create a constitutionally protected liberty interest because Section 31-6-11(C) does not limit her discretion.  Defendant more specifically asserts that Section 31-6-11(C) does not mandate a certain outcome should the state provide the four day notice nor does Section 31-6-11(C) mandate a certain outcome should the state not provide the four day notice.  To the contrary, Plaintiffs contend that Section 31-6-11(C) limits Defendant's discretion in that Section 31-6-11(C) requires that she provide Section 31-6-11(C) notice and mandates that a particular outcome be reached, i.e., a four day notice.

Section 31-6-11(C) contains the following language:  "the target of a grand jury investigation *shall* be notified in writing of the following information: ...  (3) the target's right to

testify no earlier than four days after receiving the target notice...."[1]  Emphasis added.  This language clearly provides grand jury targets with an expectation of receiving process, i.e., notice.  However, a mere expectation of process, without more, does not establish a liberty interest

---

[1] Plaintiffs assume that "shall" is mandatory language.  The United States Supreme Court and legal scholars, however, have concluded that the meaning of "shall" is not so clear cut.  For example, in *United States v. Montalvo-Murillo*, 495 U.S. 711 (1990), the United States Supreme Court was faced with interpreting former 18 U.S.C. §3142(f) which provided that a detention hearing "shall be held immediately upon the [detainee's] first appearance before the judicial officer...."  The United States Supreme Court held that the word "shall" did not bar an untimely hearing and subsequent detention.  "Shall," in that case, was not mandatory.

Joseph Kimble, a noted legal writing professor, wrote that "[a]t most, *shall* creates a presumption that the provision is mandatory or the duty absolute.  Courts have found many ways to overcome the presumption...." Joseph Kimble, *The Many Misuses of Shall*, 3 Scribes J. Legal Writing 61, 73 (1992).  Professor Kimble observed that "*shall* can mean 'absolutely must' or 'should' or 'may.'"  *Id*. at 75.

Bryan A. Garner, the nation's leading authority on legal writing style, cogently described the problems with "shall" in A Dictionary of Modern Legal Usage (2d ed.) at 939:

> [F]ew reforms would improve legal DRAFTING more than if drafters were to begin paying closer attention to the verbs by which they set forth duties, rights, prohibitions, and entitlements.  In the current state of common-law drafting, these verbs are a horrific muddle–and, what is even more surprising, few drafters even recognize this fact.  The primary problem is *shall*, to which we must immediately turn.
>     **A.** *Shall*.  This word runs afoul of several basic principles of good drafting.  The first is that a word used repeatedly in a given context is presumed to bear the same meaning throughout.  (*Shall* commonly shifts its meaning even in midsentence.)  The second principle is strongly allied with the first: when a word takes on too many senses and cannot be confined to one sense in a given document, it becomes useless to the drafter.  (*Shall* has as many as eight senses in drafted documents.)  The third principle has been recognized in the literature on legal drafting since the mid-19th century: good drafting generally ought to be in the present tense, not the future.  (*Shall* is commonly used as a future-tense modal verb.)  In fact, the selfsame quality in *shall*–the fact that it is a CHAMELEON-HUED WORD–causes it to violate each of those principles.
>     How can *shall* be so slippery, one may ask, when every lawyer knows that it denotes a mandatory action?  Well, perhaps every lawyer has heard that it's mandatory, but very few consistently use it in that way.  And, as a result, courts in virtually every English-speaking jurisdiction have held–by necessity–that *shall* means *may* in some contexts, and vice-versa.  These holdings have been necessary primarily to give effect to slipshod drafting.

Neither the Court nor lawyers should assume that "shall" is mandatory language.

6

protected by procedural due process.  *See Olim*, 461 U.S. at 250 n.12.  Two federal appellate cases dealing with state notice statutes are instructive on this point.

In *Pusey v. City of Youngstown*, 11 F.3d 652, 656 (6th Cir. 1993), *cert. denied*, 512 U.S. 1237 (1994), the state statute at issue required notice to crime victims or their next of kin of the time and place the trial or change of plea hearing concerning the offense committed against the victim would occur.  This notice would give the victim or victim's next of kin an opportunity to testify at the trial or plea hearing.  The Court of Appeals for the Sixth Circuit determined that the state "statute extends procedural rights, notice, to crime victims but fails 'to protect a substantive interest to which the individual has a legitimate claim of entitlement.'" *Id*. (quoting *Olim*, 461 U.S. at 250).  The Sixth Circuit further determined that the state statute "does not create a liberty interest here because it only provides that the victim has the right to be notified.  The statute does not specify how the victim's statement must affect the hearing nor does it require a particular outcome based on what the victim has said." *Id*.

In *James v. Rowlands*, 606 F.3d 646, 656 (9th Cir. 2010), a state statute required a state official to notify a parent, guardian, or responsible relative of a minor when the state official took a minor into temporary protective custody.  Another state statute directed a state official to notify a minor's parents or guardians of any placement agreements.  *Id*.  The Court of Appeals for the Ninth Circuit indicated that

> [t]o create a right protected by the Due Process Clause, the state law 'must provide more than merely procedure; it must protect some substantive end.'  The California statutes that James contends required the officials to notify him do not, even under James's construction, establish any substantive predicates or mandate any outcomes.  At most, they simply require notice.

*Id*. at 656-57 (citations omitted).  The Ninth Circuit further explained that even though James, as a parent, has a "constitutionally protected liberty interest in participating in the care and

management of [his] children," the "state does not create new constitutional rights by enacting laws designed to protect existing constitutional rights." *Id*. at 657.  In other words, "when a state establishes procedures to protect a liberty interest that arises from the Constitution itself-like a parent's liberty interest here-the state does not thereby create a new constitutional right to those procedures themselves, and non-compliance with those procedures does not necessarily violate the Due Process Clause.  Rather, the Due Process Clause itself determines what process is due before the state may deprive someone of a protected liberty interest." *Id*. (citations omitted).

Like the state statutes in both *Pusey* and *James*, Section 31-6-11(C) requires notice, but fails to establish "substantive" predicates or interests and does not mandate any particular outcome.  The Court might reach a different conclusion if, for example, Section 31-6-11(C) gave the grand jury target a substantive right to dismissal of the indictment as a consequence or outcome of noncompliance with the notice requirements.  Section 31-6-11(C) is, however, merely a procedural notice statute.  Moreover, even if Plaintiffs have an existing underlying constitutional right to present testimony or exculpatory evidence to a grand jury, as the Ninth Circuit noted in *James*, the creation of a state procedural law to protect an existing constitutional right does not create a new constitutional right to that procedure.  Because Section 31-6-11(C)(3) does not create a liberty interest protected by procedural due process, Plaintiffs have failed, as a matter of law, to state a §1983 claim based on a violation of the Fourteenth Amendment.  Consequently, the Complaint will be dismissed with prejudice under Rule 12(b)(6).

IT IS ORDERED that the Motion to Dismiss (Doc. No. 8) is granted and that the Complaint will be dismissed with prejudice.

_____
SENIOR UNITED STATES DISTRICT JUDGE